UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BUSS CHEMTECH AG, | Case No. 1:25-cv-03710-JGK |
| Plaintiff, | **DEFENDANT PCS PHOSPHATE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PLAINTIFF BUSS CHEMTECH'S COMPLAINT** |
| v. | |
| PCS PHOSPHATE COMPANY, INC. | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

ARGUMENT ............................................................................................................... 4

A.     DISMISSAL OR STAY IS WARRANTED UNDER *BRILLHART/WILTON* OR,
IN THE ALTERNATIVE, *COLORADO RIVER* ABSTENTION ...................... 4

     1.    As a Threshold Matter, the Forum Selection Clause does not Affect
Abstention ........................................................................................... 5

     2.    *Brillhart/Wilton* is the Appropriate Framework Because this Action is in
Substance a Declaratory Judgment Case ............................................ 7

     3.    The *Brillhart/Wilton* Factors Warrant Abstention ............................ 9

          a.    This Action Serves No Useful Purpose and Would Encourage
Duplicative Litigation ............................................................ 10

          b.    Buss's Filing in New York is Procedural Fencing and Forum
Shopping ................................................................................ 12

          c.    Retaining Jurisdiction Would Create Unnecessary Friction and Risk
Inconsistent Judgments .......................................................... 13

          d.    The North Carolina Action Is First-Filed, Encompasses All Issues
Raised Here, and Provides an Opportunity for a More Effective
Remedy ................................................................................... 13

     4.    Alternatively, the *Colorado River* Factors Also Warrant Abstention ................. 15

          a.    The Federal Forum is Less Convenient ................................... 16

          b.    Abstention is Necessary to Avoid Piecemeal Litigation ........... 17

          c.    Order of Filing and Progress of the Cases ............................... 18

          d.    No Federal Law is Implicated Here ......................................... 18

          e.    The North Carolina Action can Adequately Protect Buss's Rights .......... 19

          f.    Vexatious or Reactive Nature of the Federal Suit ................... 19

B.     THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED .......................................................................................... 20

     1.    Buss's Breach of Contract Claim Fails Because It Rests Exclusively on an
Unenforceable Forum Selection Clause .............................................. 20

     2.    Buss's Fraudulent Inducement and Negligent Misrepresentation Claims Are
Not Pleaded with Particularity and Fail to Allege Any Actionable
Misrepresentation ............................................................................... 21

CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Com Corp. v. Cap. 4, Inc.*,
    626 F. Supp. 2d 428 (S.D.N.Y. 2009)...................................................................22

*Abe v. New York Univ.*,
    No. 14-CV-9323 (RJS), 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016)..........................16, 18

*Alley Sports Bar, LLC v. SimplexGrinnell, LP*,
    58 F. Supp. 3d 280 (W.D.N.Y. 2014)...................................................................23

*Am. All. Ins. Co. v. Eagle Ins. Co.*,
    961 F. Supp. 652 (S.D.N.Y. 1997) ...............................................................2, 15, 17

*Am. Home Assurance Co. v. Babcock & Wilcox Co.*,
    No. 06-CIV-6506, 2007 WL 4299847 (E.D.N.Y. Dec. 6, 2007)............................11

*AMNEX, Inc. v. Rowland*,
    25 F. Supp. 2d 238, 245 (S.D.N.Y. 1998) ............................................................16

*Application of Whitehaven S.F., LLC v. Spangler*,
    45 F. Supp. 3d 333 (S.D.N.Y. 2014)...................................................................21

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
    762 F.2d 205 (2d Cir. 1985)...................................................................18, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................20

*Brillhart v. Excess Insurance Co. of America*,
    316 U.S. 491 (1942)................................................................... *passim*

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)................................................................... *passim*

*Dancor Const., Inc. v. FXR Const., Inc.*,
    64 N.E.3d 796 (Ill. App. Ct. 2016) ...................................................................6

*De Cisneros v. Younger*,
    871 F.2d 305 (2d Cir. 1989)...................................................................15, 17, 18, 19

*DePasquale v. Allstate Ins. Co.*,
    179 F. Supp. 2d 51 (2002)  ...................................................................8, 12

*DFA Dairy Brands, LLC v. Primus Builders, Inc.*,
No. 521CV00026KDBDSC, 2021 WL 4258797 (W.D.N.C. Jul. 27, 2021), ..........................5

*DFA Fairy Brands, LLC v. Primus Builders, Inc.*,
No. 521CV00026, 2021 WL 3616711 (W.D.N.C. Aug. 16, 2021) ..........................................5

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)..............................................................................................4, 10

*Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*,
983 F. Supp. 403 (S.D.N.Y. 1997) ........................................................................................23

*Gen. Star Int'l Indemnity Ltd.*,
No. 01 CIV. 11379 AGS, 2002 WL 850012 (S.D.N.Y. 2002) ...............................................8

*Goldentree Asset Mgmt., L.P. v. Longaberger Co.*,
448 F. Supp. 2d 589 (S.D.N.Y. 2006).....................................................................................7

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
735 F. Supp. 581 (S.D.N.Y. 1990) ........................................................................................13

*Great S. Bay Med. Care, P.C. v. Allstate Ins. Co.*,
204 F. Supp. 2d 492 (E.D.N.Y. 2002) ..................................................................................17

*LMC Indus. Contractors, Inc. v. Dominion Energy Transmission, Inc.*,
No. 5:20-CV-677, 2021 WL 3737727 (N.D.N.Y. Aug. 24, 2021)..........................................5

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
840 F. Supp. 211 (E.D.N.Y. 1994) .........................................................................................6

*Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*,
288 N.C. 122, 217 S.E.2d 551 (1975).................................................................................21

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
638 F. Supp. 3d 333 (S.D.N.Y. 2022)...................................................................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp., Inc.*,
No. 02-CIV-10338(SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003) ..............................13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*,
108 F.3d 17 (2d Cir. 1997)......................................................................................................8

*Nat'l Union Fire Ins. Co of Pittsburgh v. Warrantech.*,
No. 00-CIV-5007NRB, 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001) ..........................6, 13, 14

*Nat'l Union Fire Ins. Co. v. Turbi de Angustia*,
2005 WL 2044930 (S.D.N.Y. Aug. 23, 2005)..........................................................................7

*Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*,
554 F. Supp. 3d 568 (S.D.N.Y. 2021)........................................................................21, 22, 23

*Price & Price Mech. of N.C., Inc. v. Miken Corp.*,
    661 S.E.2d 775 (N.C. Ct. App. 2008) ..................................................................5

*R.R. St. & Co. v. Vulcan Materials Co.*,
    569 F.3d 711 (7th Cir. 2009) ..............................................................................8

*Radioactive, J.V. v. Manson*,
    153 F. Supp. 2d 462 (S.D.N.Y. 2001)..................................................................7

*Reliance Ins. Co. of Illinois v. Multi-Financial Sec. Corp.*,
    No. 94 Civ. 6971 (SS), 1996 WL 61763 (S.D.N.Y. Feb. 13, 1996)......................11

*Royal Indem. Co. v. Apex Oil Co.*,
    511 F.3d 788 (8th Cir. 2008) ..............................................................................8

*Saint-Jean v. Emigrant Mortg. Co.*,
    129 F.4th 124 (2d Cir. 2025) ..............................................................................21

*State ex rel. Utilities Comm'n v. Carolina Water Serv., Inc. of N. Carolina*,
    149 N.C. App. 656, 659, 562 S.E.2d 60, 63 (2002) ............................................21

*Stoncor Grp., Inc. v. Peerless Ins. Co.*,
    322 F. Supp. 3d 505 (S.D.N.Y. 2018)..................................................................10

*Telesco v. Telesco Fuel and Masons' Materials, Inc.*,
    765 F.2d 356 (2d Cir. 1985)................................................................................19

*TIG Ins. Co. v. Fairchild Corp.*,
    No. 07-CIV-8250 (JGK), 2008 WL 2198087 (S.D.N.Y. May 27, 2008)...................11, 15, 19

*Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*,
    No. 02 Civ. 9800 (WHP), 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004) ..................13

*Tuebor Reit Sub LLC v. Paul*,
    No. 19-CV-8540 (JPO), 2020 WL 4897137 (S.D.N.Y. Aug. 19, 2020) ................15

*U.S. Specialty Ins. Co. v. Village of Chester*,
    No. 19-cv-467, 2020 U.S. Dist. LEXIS 196516 (S.D.N.Y. Oct. 22, 2020)............14

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)........................................................................ *passim*

*XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*,
    414 F. Supp. 3d 605 (S.D.N.Y. 2019)..................................................1, 6, 7, 12

**Statutes**

28 U.S.C. § 1332.................................................................................................2

28 U.S.C. § 2201.................................................................................................2, 4, 8, 13

N.C. Gen. Stat. § 22B–2 ................................................................................................5, 13, 20

N.C. Gen. Stat. § 44A-7(3) ...................................................................................................5

New York Gen. Bus. Law § 757(1) ..............................................................................5, 6, 20

**Other Authorities**

Fed. R. Civ. P. 9 ................................................................................................................20, 21

Fed. R. Civ. P. 12(b)(1) ..........................................................................................................2

Fed. R. Civ. P. 12(b)(6) .....................................................................................................2, 20

## PRELIMINARY STATEMENT

Buss ChemTech AG ("Buss") seeks declaratory relief in this Court to defend against affirmative claims that PCS Phosphate Company, Inc. ("PCS") properly filed against Buss in North Carolina—the location of the construction project at issue—more than two months earlier ("first-filed North Carolina Action"). To avoid judicial inefficiency and the very real prospect of inconsistent, irreconcilable judgments, PCS respectfully moves to dismiss or stay Buss's second-filed action in this Court.

PCS expects that Buss's primary basis for defending against this motion will be a forum selection clause specifying New York courts. However, precedent from this Circuit makes clear that such clauses do not justify maintaining duplicative litigation in the present circumstances, including for the following reasons:

***First***, North Carolina law is clear that an out-of-state forum selection clause for a construction project in North Carolina is void as against public policy and that, as a result, PCS was *required by law* to bring its lawsuit against Buss in North Carolina. Notably, New York law contains a similar statutory mandate for construction projects in New York. In such situations, a New York "forum selection clause does not make abstention inappropriate." *XL Ins. Am., Inc. v. DiamondRock Hosp. Co.,* 414 F. Supp. 3d 605, 609–10 (S.D.N.Y. 2019) (staying second-filed action under *Brillhart* to allow first-filed action to proceed despite the existence of a New York forum selection clause).

***Second***, the first-filed North Carolina Action involves an additional defendant whose participation is critical for a complete resolution of this dispute and who cannot be joined in this second-filed action. Specifically, central to this dispute is the intertwined and overlapping

performance of both Buss and Jacobs Engineering Group, Inc. ("Jacobs")[1] under their respective agreements with PCS to design, engineer, and successfully commission PCS's anhydrous hydrogen fluoride ("AHF") plant (the "AHF Plant") in Aurora, North Carolina (the "Project"). *See Am. All. Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 658 (S.D.N.Y. 1997) (abstaining because "the problem of piecemeal litigation is exacerbated by the risk of inconsistent results because the parties to the suits are not identical and thus not all bound by the judgment of any given court").

Thus, to ensure consistent outcomes for all essential parties, allegations against Jacobs and Buss should be resolved together in North Carolina because:

- North Carolina is the location of the first-filed action;

- North Carolina is the location of the Project at issue;

- North Carolina is where Buss's, Jacobs's, and PCS's performance under the agreements occurred;

- North Carolina is the only forum where all three parties are subject to suit; and

- North Carolina law mandates that disputes over construction projects in North Carolina be governed by North Carolina law and resolved in North Carolina courts, regardless of any forum selection clause to the contrary.

In contrast, no part of the Project occurred in New York, no party is a resident of New York, and New York is an inconvenient forum that cannot resolve the disputes among all parties.

Buss's Complaint should be dismissed or stayed under (i) Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and the Court's discretion under 28 U.S.C. § 2201 (the Declaratory Judgment Act); and (ii) FRCP 12(b)(6) for failure to state a claim.

---

[1] Jacobs is not subject to specific personal jurisdiction in New York arising out of its actions related to this case. Further, complete diversity pursuant to 28 U.S.C. § 1332 does not exist between PCS and Jacobs.

## FACTUAL BACKGROUND

This case involves the construction of the AHF Plant, which is owned and operated by PCS. Buss is a sophisticated entity that develops chemical process technologies worldwide and previously provided the process technology for similar AHF plants in China.

In September 2019, PCS executed the Engineering, Procurement and Field Support Agreement ("Agreement") with Buss to provide the process and technology design for the AHF Plant. (Compl., Ex. 1.) In the Agreement, Buss agreed to provide the following services for the Project:

a.  The Extended Basic Engineering Package,

b.  The right to use [Buss's] process technology,

c.  Design, procurement and supply of the Materials,

d.  Assistance during installation of the Materials as site, and

e.  Assistance during commissioning, start-up, and performance test of the Plant.

(Compl., Ex. 1, at 29.)

In addition, Buss agreed to provide "all personnel, supervision, services, materials and supplies and do all things necessary for the engineering, design, delivery and procurement of Proprietary Equipment, testing and commissioning of the [AHF] Plant." (Compl., Ex. 1, at 5.) PCS entered into a separate agreement with Jacobs to serve as the engineer for the AHF Plant.

On November 13, 2024, PCS sent Buss a notice of dispute and met with Buss in December 2024 pursuant to the dispute resolution provision in the Agreement. (Compl. ¶¶ 54, 56.) At no time did Buss ever send PCS a notice of dispute or assert any claims against PCS.

On February 28, 2025, PCS filed the first-filed North Carolina Action against Buss and Jacobs in Beaufort County, North Carolina—where the AHF Plant is located—alleging various

defects in the design and engineering resulting in a two-and-a-half-year delay in the start-up of the AHF Plant.[2]  On March 4, 2025, PCS's counsel sent Buss's counsel a copy of the North Carolina complaint and asked if he would agree to accept service on behalf of Buss.  Two weeks later, Buss's counsel declined to accept service, apparently to allow Buss time to file this action.  PCS obtained formal service on Buss under the Hague Convention on May 9, 2025.  Instead of responding to the first-filed North Carolina Action, Buss filed its Complaint in this Court.

As the Project engineer, Jacobs verified designs and equipment specified by Buss for the AHF Plant, among other services.  Despite not naming Jacobs as a party to this action, Buss's Complaint suggests that Buss will attempt to blame Jacobs for the design and engineering failures on the Project.  (*See, e.g.,* Compl. ¶¶ 41, 44, 46, 58).

## ARGUMENT

### A.  DISMISSAL OR STAY IS WARRANTED UNDER *BRILLHART/WILTON* OR, IN THE ALTERNATIVE, *COLORADO RIVER* ABSTENTION

The Declaratory Judgment Act provides "a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."  *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).  Because Buss's Complaint is—in substance—a declaratory judgment action, the factors set forth in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (together, the "*Brillhart/Wilton*" abstention doctrine) apply and strongly favor abstention in deference to the first-filed North Carolina Action.

In the alternative, abstention—or at least a stay—is also warranted under *Colorado River*.

---

[2]  A true and correct copy of the North Carolina Complaint is attached as Exhibit 1.  On June 20, 2025, PCS filed its First Amended Complaint containing minor revisions to its allegations against Jacobs.

1.      **As a Threshold Matter, the Forum Selection Clause does not Affect Abstention**

Buss acknowledges that the Project is in North Carolina and that this Complaint was filed directly in response to the first-filed North Carolina Action.  (Compl. ¶ 1.)  Furthermore, Buss does not assert that New York has any actual connection to the parties, the Project, or the performance of the contract.  Instead, Buss relies solely on the forum-selection clause identifying New York courts, claiming "[t]hat ends the analysis."  (ECF No. 18, p. 2).

However, North Carolina law expressly voids any provision that purports to require litigation in another state or the application of another state's law, declaring such clauses "void and against public policy."  *See* N.C. Gen. Stat. § 22B–2.[3]  Courts have consistently enforced this fundamental public policy.  *See Price & Price Mech. of N.C., Inc. v. Miken Corp.*, 661 S.E.2d 775, 777-78 (N.C. Ct. App. 2008) (voiding Florida forum-selection and choice-of-law clauses under § 22B-2); *DFA Dairy Brands, LLC v. Primus Builders, Inc.*, No. 521CV00026KDBDSC, 2021 WL 4258797, at *3 (W.D.N.C. Jul. 27, 2021), *memorandum and recommendation adopted sub nom, DFA Fairy Brands, LLC. v. Primus Builders, Inc.,* No. 521CV00026, 2021 WL 3616711 (W.D.N.C. Aug. 16, 2021) (voiding Georgia choice-of-law clause under § 22B-2).

New York has a similar statute voiding foreign forum-selection and choice-of-law clauses for home-state construction projects.  *See* New York Gen. Bus. Law ("G.B.L.") § 757(1).  Courts have also consistently enforced this fundamental public policy of New York.  *See, e.g., LMC Indus.*

---

[3]  The North Carolina statute's scope is broad, applying to contracts "[t]o build, effect, alter, repair, or demolish any improvement upon, connected with, or on or beneath the surface of any real property." N.C. Gen. Stat. § 44A-7(3); *see id.* § 22C-1(2).  Improvement includes "all or any part of any building structure, erection, alteration, demolition, excavation, clearing, grading, filling, or landscaping." Id. § 44A-7(4); *see id.* § 22C-1 (3).

*Contractors, Inc. v. Dominion Energy Transmission, Inc.*, No. 5:20-CV-677 (FJS/ATB), 2021 WL 3737727, at *2 (N.D.N.Y. Aug. 24, 2021) (denying a motion to dismiss based on a Virginia forum selection clause); *Dancor Const., Inc. v. FXR Const., Inc.*, 64 N.E.3d 796, 814–15 (Ill. App. Ct. 2016) ("To enforce the [Illinois] forum-selection clause would be to disregard section 757 and New York's public policy regarding construction contracts."). Thus, both North Carolina and New York have statutes that require the application of local law and a local forum to local projects, regardless of a forum-selection clause to the contrary.

But even if New York law were to apply, "[c]hoice of law considerations do not weigh against abstention." *Nat'l Union Fire Ins. Co of Pittsburgh v. Warrantech.*, No. 00-CIV-5007NRB, 2001 WL 194903, at *4 (S.D.N.Y. Feb. 27, 2001) (dismissing and expressing "confidence in the ability of Texas state court to perform the requisite choice of law analysis and apply the appropriate state law to the action before it"); *see also Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 217 (E.D.N.Y. 1994) ("[s]imply because this court sits in New York does not mean that it can apply New York state law any better than a California court.").

Further, the mere existence of a forum-selection clause does not strip federal courts of discretion to abstain, especially in a declaratory judgment context. "Holding that a forum selection clause precludes abstention would mean that parties could effectively contract around federal declaratory judgments policy, as enacted in a federal statute. It would mean that the forum selection clause binds not just the parties but the Court as well." *XL Ins.*, 414 F. Supp. 3d at 609–10. In *XL Insurance* plaintiffs (i) filed an action in the Southern District of New York for declaratory judgment seeking to enforce a forum selection clause identifying New York but only (ii) after a parallel proceeding was filed over the same issues in the Virgin Islands as required by

a Virgin Islands "home state" policy. *Id.* at 607–608. In abstaining under *Brillhart/Wilton*, the court stated that "the forum selection clause does not make abstention inappropriate, as least for a declaratory judgment action." *Id.* at 609–610; *see also Nat'l Union Fire Ins. Co. v. Turbi de Angustia*, 2005 WL 2044930, at *2-3, 5 (S.D.N.Y. Aug. 23, 2005) (staying federal action in favor of a parallel state court despite the existence of a forum selection clause); *Allstate Life Ins. Co. v. Linter Group*, Ltd., 994 F.2d 996, 1000 (2d Cir. 1993) (forum selection clause does not prevent abstention "where it is otherwise warranted."); *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 477 (S.D.N.Y. 2001) (dismissing action in favor of California state court case under *Colorado River* doctrine despite existence of New York forum selection clause); *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 593 (S.D.N.Y. 2006) (abstention under *Colorado River* was appropriate despite New York choice of law provision).

Like in *XL Insurance*, Buss (i) filed an action seeking to enforce a forum selection clause identifying this Court but only (ii) after PCS had initiated the first-filed North Carolina Action as required by North Carolina's "home state" policy. An abstention analysis—and ultimately abstention—is thus warranted.

## 2. *Brillhart/Wilton* is the Appropriate Framework Because this Action is in Substance a Declaratory Judgment Case

"[I]t would be uneconomical as well as vexatious to proceed in a declaratory judgment suit ... where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. The Supreme Court reaffirmed this broad discretion in *Wilton*: "[a] district court acted within its bounds in staying [an] action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court." 515 U.S. at 290. As Buss's Complaint (1) is

fundamentally a request for declaratory judgement, and (2) presents the same issues as the first-filed North Carolina Action, abstention under *Brillhart/Wilton* is warranted here.

**First,** although Buss's Complaint includes four nominally separate causes of action, it is in substance a request for a declaration that Buss is not liable to PCS under the Parties' Agreement. Courts in the Second Circuit consistently look beyond formal labels and examine whether the plaintiff is seeking substantive declaratory relief, even when coupled with other claims. *Brillhart/Wilton* abstention applies "whether or not the claim for declaratory relief is brought solely under the DJA [Declaratory Judgment Act] or is added to claims for relief brought under other auspices." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997). *Brillhart/Wilton* abstention is appropriate where the claim, though not labeled as such, is "in essence one for declaratory relief." *Am. Alliance Ins., Co.* 961 F. Supp. at 657–58. Likewise, in *Gen. Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, the court declined jurisdiction where the monetary claims "[stemmed] from the underlying request for declaratory relief" and served no independent purpose. 2002 WL 850012, at *5 (S.D.N.Y. May 3, 2002), *aff'd*, 57 F. App'x 892 (2d Cir. 2003); *see also Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 796 (8th Cir. 2008); *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 716–17 (7th Cir. 2009). In *DePasquale v. Allstate Ins. Co.*, the court dismissed the action under *Brillhart/Wilton* because even though framed as a breach of contract case, the suit was "characterized only as a single claim for declaratory relief regarding rights and obligations under the policy." 179 F. Supp. 2d 51, 59 (E.D.N.Y. 2002). These cases reflect a consistent principle: courts look to the functional purpose of the suit, not the formalistic pleading labels.

**Second**, Buss's Complaint presents this Court with the same issues as those in the first-filed North Carolina action. The Complaint is purely reactive, as Buss never previously notified

PCS of any claims against it, and would never have filed this action but for the first-filed North Carolina Action. Indeed, the Complaint's purportedly separate claims for non-declaratory relief merely duplicate the same defenses available to Buss in North Carolina:

- **Count I** (Declaratory Judgment) mirrors the central issues in the North Carolina Action: whether Buss is liable for the design/engineering defects alleged in that action. (Compl. ¶¶ 60–63.)

- **Count II** (Breach of Contract) is premised solely on PCS's alleged "violation" of a forum-selection clause that is void under North Carolina law (and New York's analogous public policy). That claim does not seek damages for failure to perform, but rather is a defensive argument challenging the North Carolina forum, and in function and effect, is declaratory. (Compl. ¶¶ 64–67.)

- **Counts III** (Fraudulent Inducement) and **IV** (Negligent Misrepresentation) are effectively affirmative defenses: they seek to attack PCS's contract claims in the North Carolina action that Buss is responsible for the AHF Plant's delays or design defects. (Compl. ¶¶ 68–85.)

Here, the gravamen of Buss's Complaint is to obtain a judicial declaration that it bears no liability for the AHF Plant's design and engineering failures that PCS asserts in North Carolina. Each of its four counts directly seeks to achieve that goal. Such tactics—facially converting a purely declaratory claim into a "mixed" complaint—should be rejected.

### 3. The *Brillhart/Wilton* Factors Warrant Abstention

Under *Brillhart/Wilton*, federal courts consider: (1) whether a declaratory judgment would serve a useful purpose in clarifying or settling the legal issues; (2) whether the judgment would finalize the controversy and offer relief from uncertainty; (3) whether the declaratory plaintiff is

engaging in "procedural fencing" or forum shopping; (4) whether the use of a declaratory action would increase friction with state courts; and (5) whether there is a better or more effective remedy. *Dow Jones & Co.*, 346 F.3d at 359–60. Each factor here supports dismissal or a stay of Buss's claims.

<blockquote>a. This Action Serves No Useful Purpose and Would Encourage Duplicative Litigation</blockquote>

A declaratory judgment in this Court would not settle the entire dispute, because PCS's claims against Buss and Jacobs—a key party not before this Court—would remain in the first-filed North Carolina Action. Proceeding here invites the risk of inconsistent determinations: one court could find Buss liable, while another absolves it (or vice versa). *See Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 517 (S.D.N.Y. 2018) (abstaining under *Brillhart/Wilton* because a declaratory judgment "would not finalize the controversy and offer relief from uncertainty" but rather "only further confuse" matters in ongoing state-court litigation).

By contrast, the first-filed North Carolina Action can resolve all related claims, including any cross-claims between Buss and Jacobs. In defending the claims by PCS in North Carolina, Jacobs and Buss are expected to blame each other for the problems at the Project. For example, Jacobs's Motion to Dismiss in the first-filed North Carolina Action states that "*Buss* technology is apparently not working as well as PCS Phosphate expected..." and PCS does "however allege fraudulent misrepresentation [only] against Buss."[4] Buss appears similarly primed to blame Jacobs for the defective work at the Project. *See* Compl. ¶ 41 ("PCS instead decided to fragment

---

[4] *See* Jacobs' Motion to Dismiss pp. 1 & 13, a true and correct copy of which is attached hereto as Exhibit 2. This "Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss...." *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 337 (S.D.N.Y. 2022).

the EPC responsibilities among a patchwork of different companies, including *Jacobs* …")
(emphasis added); ¶ 44 ("silica filters installed in a building where it was too hot for the material
of construction … the building's design and temperature were not Buss's responsibility"); ¶ 46
("thermowells … engineered and purchased by PCS and *Jacobs*—corroded and led to plant
downtime…") (emphasis added); ¶ 58 (PCS's Complaint "does not differentiate between PCS's
allegations against Buss and Jacobs.").

Proceeding with this action risks piecemeal litigation and fragmented resolution.  Because
there is not complete diversity between PCS and Jacobs, this Court cannot address PCS's claims
against Jacobs, which will be litigated in North Carolina.  *See Reliance Ins. Co. of Illinois v. Multi-
Financial Sec. Corp.*, No. 94 Civ. 6971 (SS), 1996 WL 61763, at *4 (S.D.N.Y. Feb. 13, 1996)
(abstaining where only the state court action included all relevant parties).  Contrary to Buss's
assertion that Jacobs's contract was only with PCS Administration, a non-party here (*see* ECF 18
p. 3), PCS has express rights under the agreement with Jacobs as a Company Affiliate and a party
that issued purchase orders to Jacobs.

Moreover, proceeding with both actions in parallel would not only result in inefficiency
and duplication but would also create a substantial risk of inconsistent rulings on overlapping state-
law issues, undermining procedural fairness and finality.  For example, if the North Carolina court
found Buss not liable for many of the design issues, and this Court simultaneously declared Buss
liable, it would result in conflicting judgments and complicate enforcement.  *See TIG Ins. Co. v.
Fairchild Corp.*, No. 07-CIV-8250 (JGK), 2008 WL 2198087, at *3-4 (S.D.N.Y. May 27, 2008)
(abstaining under *Brillhart/Wilton* because the parallel state action was "broader than the [federal]
suit, it encompassed all parties and issues present in the federal case, along with additional parties
and claims, thereby "entirely subsum[ing]" the federal action.); *Am. Home Assurance Co. v.*

*Babcock & Wilcox Co.*, No. 06-CIV-6506, 2007 WL 4299847, at *7-8 (E.D.N.Y. Dec. 6, 2007) ("the instant declaratory judgment action cannot provide full relief to the litigants or other interested parties" because the state action includes parties not present in the federal suit.).

The North Carolina court can evaluate the interrelated roles of Buss and Jacobs on the AHF Project, determining whether the project delays and operational issues stem from faults in Buss's work, Jacobs's work, or both. This Court, by contrast, is limited to addressing Buss's claims against PCS alone. Therefore, this factor strongly supports abstention.

> b. *Buss's Filing in New York is Procedural Fencing and Forum Shopping*

Buss's filing in this Court is a clear example of procedural fencing and reactive forum shopping. PCS is the true plaintiff in this dispute.

In late 2024, PCS sent its notice of dispute to and met with Buss pursuant to the dispute resolution provision in the Agreement. Buss has issued no notice of dispute to PCS and never raised any of the issues it now alleges in this Complaint through that process.

When the discussions failed to resolve the dispute, on February 28, 2025, PCS filed suit in North Carolina, the only proper forum as mandated by North Carolina state law. On March 4, 2025, PCS's counsel provided a courtesy copy of the complaint to Buss's counsel, however, Buss declined to accept service. Forcing PCS to translate the complaint and exhibits into German and formally serve Buss through the Hague Convention was apparently designed to afford Buss time to file this action. Indeed, Buss did not respond to PCS's complaint and did not seek dismissal or removal to federal court in North Carolina. Instead, Buss filed this declaratory action on May 2, 2025—over two months after PCS's initial filing.

Courts strongly disfavor these kinds of reactive declaratory lawsuits aimed at undercutting the natural plaintiff's chosen forum. *See, e.g., DePasquale*, 179 F. Supp. 2d at 60 (finding forum shopping where a party filed in federal court to avoid a prior state-court action); *XL Ins.*, 414 F.

Supp. 3d at 610–11 (the second-filed suit was essentially seeking preemptive relief against the first-filed proceeding); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Int'l Wire Grp.*, *Inc.*, No. 02-CIV-10338(SAS), 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003) ("Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff.").

Buss's procedural fencing and forum shopping weigh heavily in favor of abstention.

> c.    *Retaining Jurisdiction Would Create Unnecessary Friction and Risk Inconsistent Judgments*

Federal courts should defer to state proceedings to avoid unnecessary interference and jurisdictional conflict. *See Wilton*, 515 U.S. at 284-85.  Allowing this suit to proceed would cause needless friction with the first-filed North Carolina Action.  That action is proceeding under North Carolina law, which specifically bars enforcement of a contrary forum-selection clause.  *See* N.C. Gen. Stat. § 22B–2.  No federal-law issues arise, and the risk of duplicative discovery and contradictory rulings is substantial.  *See Warrantech*, 2001 WL 194903, at * 3 (dismissing action in favor of state proceeding because "'[g]ratitous interference' with the orderly and comprehensive disposition of a state court litigation should be avoided," particularly where the "case does not present a question of federal law."); *Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*, No. 02 Civ. 9800 (WHP), 2004 WL 193564, at *2 (S.D.N.Y. Feb. 3, 2004).  This factor also supports abstention.

> d.    *The North Carolina Action Is First-Filed, Encompasses All Issues Raised Here, and Provides an Opportunity for a More Effective Remedy*

In the North Carolina Action, filed more than two months before Buss commenced this

action, PCS asserts claims for breach of contract, warranty, and professional negligence against both Buss and Jacobs, and seeks damages for the very Project delays and defects that are the subject of Buss's Complaint.  The North Carolina court will necessarily adjudicate the parties' rights and obligations under the Agreement, including the enforceability of the forum selection clause, the liability cap, and the damages waiver.  The North Carolina action is thus "parallel" and more comprehensive. *See Warrantech Corp.*, 2001 WL 194903, at *3 n.2 ("because of the identity of parties and because plaintiff's claim for declaratory relief in the present action will be raised and decided in the broader [state] action, the state and federal proceedings are 'parallel' or 'concurrent' for purposes of abstention.").

The North Carolina action offers a more complete and efficient procedure for resolving this dispute.  That forum can adjudicate all claims between the parties—including Buss's defenses, counterclaims, and any cross-claims between Buss and Jacobs, a party absent from this federal action.  Buss's allegations of fraudulent inducement and misrepresentation can be fully litigated in that forum, and the court has jurisdiction to grant complete relief, including damages and declaratory relief.  Further, the parties have already completed the case management conference in North Carolina, agreed on discovery deadlines, and begun discovery.

By contrast, proceeding in this Court would splinter the controversy.  PCS's claims against Jacobs—and any related cross-claims—would remain in North Carolina, creating a risk of duplicative proceedings and inconsistent outcomes.  Federal courts in this District routinely invoke *Brillhart/Wilton* abstention to avoid such fragmentation.  *See, e.g., U.S. Specialty Ins. Co.  v. Village of Chester*, No. 19-cv-467, 2020 U.S. Dist. LEXIS 196516, at *10, *15–16 (S.D.N.Y. Oct. 22, 2020) (state action was better positioned to resolve the dispute, warning that concurrent litigation would risk duplication and inconsistency); *TIG Ins.  Co.*, 2008 WL 2198087, at *3–4

(dismissing declaratory action where the parallel state case included all relevant parties and raised purely state-law issues); *Am. Alliance Ins. Co.*, 961 F. Supp. at 652 (abstaining where the potential for piecemeal litigation became "an even weightier factor favoring abstention"). Where a first-filed state proceeding can resolve the entire dispute—including claims, counterclaims, and related party issues—federal courts should yield. The North Carolina action can provide complete relief to all parties, while this action cannot.

### 4. Alternatively, the *Colorado River* Factors Also Warrant Abstention

Even if this Court concludes that *Brillhart/Wilton* does not fully govern (due to Buss's artful inclusion of "monetary" claims), abstention is likewise justified under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The *Colorado River* doctrine allows a federal court to abstain from exercising jurisdiction in favor of a parallel state action in exceptional circumstances, in order to promote "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817. The doctrine is rooted in "reasons of wise judicial administration" and the desire to "avoid duplicative simultaneous litigation." *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989).

"Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Tuebor Reit Sub LLC v. Paul*, No. 19-CV-8540 (JPO), 2020 WL 4897137, at *5 (S.D.N.Y. Aug. 19, 2020) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012)). As discussed above, the North Carolina Action is plainly "parallel" to this case: it involves substantially the same parties (PCS and Buss) and arises from the same set of operative facts (the alleged failures in the AHF Project). Once a court deems the actions parallel, the following six factors to determine whether abstention is appropriate: (1) whether either court has jurisdiction over a res or property (not applicable here); (2) the inconvenience of the federal forum; (3) the desirability of avoiding

piecemeal litigation; (4) the order in which jurisdiction was obtained and the relative progress of each proceeding; (5) whether state or federal law provides the rule of decision; and (6) whether the state proceeding adequately protects the parties' rights. *See Lawrence Moskowitz CLU Ltd. v. ALP*, Inc., 830 F. App'x 50, 52 (2d Cir. 2020) (quoting *Woodford v. Cmty. Action Agency*, 239 F.3d 517, 522 (2d Cir. 2001)). The Second Circuit also considers "the vexatious or reactive nature of the federal action." *Abe v. New York Univ.*, No. 14-CV-9323 (RJS), 2016 WL 1275661, at *9 (S.D.N.Y. Mar. 30, 2016) (collecting cases). While no single factor is dispositive, "'[b]y far the most important factor' driving *Colorado River* and its progeny is the 'clear federal policy' of avoiding 'piecemeal adjudication.'" *Abe*, 2016 WL 1275661, at *7 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

### a. The Federal Forum is Less Convenient

A less convenient federal forum supports abstention. For example, in *AMNEX, Inc. v. Rowland*, the court abstained in favor of parallel Texas action because almost all "operative facts giving rise to this dispute" occurred in Texas and "most of the witnesses that the parties may call to testify at trial live in or near Texas," whereas "the closest witness to New York" resided in Florida. 25 F. Supp. 2d 238, 245 (S.D.N.Y. 1998). This factor favored abstention because litigating in Texas would plainly be more efficient and convenient for the parties and witnesses. *Id.*

Here, like in *AMNEX*, the Project at issue, the evidence, and the witnesses—such as the Project site, PCS personnel, Jacobs's team, and site-specific records—are all located in North Carolina. While Buss is a foreign entity and must travel regardless, litigating in this Court offers no convenience advantage to either party. Indeed, Buss agreed to perform its work in North Carolina. (Compl. ¶¶ 1-2.) For PCS, litigating in this Court would impose unnecessary travel and expense on both the company and potential third-party witnesses, with no offsetting benefit. By

16

contrast, the North Carolina court is ideally situated to handle this dispute efficiently and conveniently. This factor strongly supports a stay.

> b.    Abstention is Necessary to Avoid Piecemeal Litigation

The risk of "undesirable piecemeal litigation exists where all potentially liable defendants are parties in one lawsuit but one party in another lawsuit seeks a declaration of non-liability and other potentially liable defendants are not parties." *Great S. Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 498 (E.D.N.Y. 2002).

The risk of inconsistent judgments between this Court and the North Carolina state court is severe, especially given Jacobs's absence here. *See De Cisneros*, 871 F.2d at 308 (abstaining to prevent "inconsistent and mutually contradictory determinations."). Both lawsuits involve the same key factual and legal issues—whether Buss breached the contract or made misrepresentations regarding its AHF technology—and adjudicating these matters in two forums could lead to conflicting outcomes. For example, it is possible that if Buss succeeds in the North Carolina action, the result would have *res judicata* or collateral estoppel effect on PCS in this action (or vice versa). On the other hand, if Buss were to succeed in this action, it is possible that the favorable judgment would *not* have preclusive effect on the North Carolina action because of Jacobs's presence in that action. *Am. All. Ins. Co.*, 961 F. Supp. at 658 ("the problem of piecemeal litigation is exacerbated by the risk of inconsistent results because the parties to the suits are not identical and thus not all bound by the judgment of any given court.").

Resolving all liabilities in the first-filed North Carolina Action avoids fragmenting the litigation and ensures a comprehensive and consistent adjudication of the dispute. This factor, "by far the most important" under *Colorado River*, strongly favors abstention. *Abe*, 2016 WL 1275661, at *7.

> c. *Order of Filing and Progress of the Cases*

Courts also examine "the chronological order in which the actions were filed," in a common-sense manner, by examining "the relative progress of the federal and state proceedings." *De Cisneros*, 871 F.2d at 308. There is no genuine dispute that the North Carolina action was filed before this case.

Buss's decision to initiate a second lawsuit in this Court seeking a declaration of non-liability for PCS's claims in North Carolina two months after PCS sent Buss's counsel a copy of the North Carolina complaint underscores the reactive and duplicative nature of this action. Buss sought to delay the progress of the first-filed North Carolina Action by requiring PCS to formally serve Buss through the Hague Convention—effectively taking advantage of the inherent delay in international service. However, the parties have already completed the case management conference process and begun discovery in North Carolina. Buss's forum-shopping tactics should not be rewarded. Thus, this factor supports a stay.

> d. *No Federal Law is Implicated Here*

While federal courts routinely decide state-law questions in diversity cases, "the absence of federal issues does favor abstention where 'the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties.'" *Id.* at 309 (quoting *Moses H. Cone*) (cleaned up); *see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) (cases turning on questions of state law "[tip] the scale toward state resolution of the litigation.").

Here, there are no federal claims or questions. All causes of action—declaratory judgment, breach of contract, fraudulent inducement, negligent misrepresentation—arise under state law. Because state law governs all claims, this factor weighs in favor of abstention. *See TIG Ins. Co.*, 2008 WL 2198087, at *4 ("because this action raises only issues of state law and does not implicate

substantive federal law, this factor weighs heavily in favor of abstention"); *De Cisneros*, 871 F.2d at 308 (state law issues favor abstention).

        *e.    The North Carolina Action can Adequately Protect Buss's Rights*

Courts also consider whether the state forum can adequately protect the federal plaintiff's rights. *Arkwright-Bos.*, 762 F.2d at 212 (with all related claims consolidated before a single state judge, the state forum was deemed not only adequate but more efficient for achieving a "comprehensive disposition."). In *Arkwright-Boston*, the court observed that the state court was "in a better position to sort out the issues" since the litigation involved "exclusively questions of local law." *Id.* Similarly, *General Reinsurance Corp. v. Ciba-Geigy Corp.* held that the parallel New Jersey action "embrace[d] all the issues" that were raised in the federal case, and the key parties "are parties to both actions." 853 F.2d 78, 81-82 (2d Cir. 1988). Thus, the federal plaintiffs' rights could be fully litigated in the state proceeding, satisfying this factor. *Id.* at 82.

Here, the North Carolina state court is fully capable of protecting all parties' rights and granting complete relief. North Carolina Business Courts handle complex disputes regarding construction projects, out of state parties, and improvements to real property within the state. *See, e.g., Am. Mechanical, Inc. v. Bostic*, 782 W.E. 2d 344 (2016). Buss can assert its defenses and counterclaims in the North Carolina case, and the state court can comprehensively resolve the entire dispute. This factor also strongly supports a stay.

        *f.    Vexatious or Reactive Nature of the Federal Suit*

This action is an attempt to undercut PCS's choice of the required North Carolina forum. *See Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d Cir. 1985) (affirming abstention). Buss filed suit in this Court only *after* receiving PCS's North Carolina complaint, and Buss timed its filing to preempt PCS's choice of forum while delaying formal service in North Carolina. Only then did Buss seek to invoke the New York forum-

selection clause after PCS forced its hand by suing in North Carolina. The reactive nature of this suit confirms that abstention is warranted.

Taken together, the *Colorado River* factors strongly support abstention. A stay would preserve Buss's ability to later litigate in this Court if necessary, while allowing the North Carolina state court to comprehensively resolve the dispute. Accordingly, PCS respectfully requests that this Court stay this action under the *Colorado River* doctrine, in the alternative to abstention under *Brillhart/Wilton*.

## B.  THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim that is plausible on its face, and fraud-based claims must satisfy the heightened pleading standards under Rule 9(b), requiring particularized allegations of the circumstances constituting fraud. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 9(b) & 12(b)(6).

Because Buss has not pleaded cognizable claims for breach of contract, fraudulent inducement, or negligent misrepresentation, those claims should be dismissed.

### 1.  Buss's Breach of Contract Claim Fails Because It Rests Exclusively on an Unenforceable Forum Selection Clause

Buss alleges that PCS breached the Agreement solely by initiating litigation in North Carolina in violation of the contract's forum-selection clause. However, as discussed above, this clause is not enforceable under North Carolina Law (N.C. Gen. Stat. § 22B-2) as reinforced by New York law (G.B.L. § 757(1)). Thus, the forum selection clause is unenforceable and void.

Under North Carolina law, contractual provisions that violate explicit public policy are unenforceable and cannot form the basis for a valid breach of contract claim. *See Marriott Fin.*

20

*Servs., Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 128–29, 217 S.E.2d 551, 556 (1975) (unenforceable contract terms provide no actionable breach claim); *State ex rel. Utilities Comm'n v. Carolina Water Serv., Inc. of N. Carolina*, 149 N.C. App. 656, 659, 562 S.E.2d 60, 63 (2002) (provisions of a contract which violate public policy of the state will not be enforced by courts). Second Circuit authority similarly confirms that breach of contract claims cannot rest on void or unenforceable contractual provisions. *See, e.g., Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 156 (2d Cir. 2025); *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 344 (S.D.N.Y. 2014) (courts will not enforce voided contracts or recognize rights arising from them).

Because PCS's initiation of litigation in North Carolina complies with North Carolina law and public policy, PCS did not breach any enforceable contractual obligation and Count II should be dismissed.

**2.    Buss's Fraudulent Inducement and Negligent Misrepresentation Claims Are Not Pleaded with Particularity and Fail to Allege Any Actionable Misrepresentation**

To state a viable claim for fraudulent inducement or negligence misrepresentation, Buss must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. To survive a motion to dismiss, a fraud-based claim must "(i) specify the statements that the plaintiff contends were fraudulent; (ii) identify the speaker; (iii) state where and when the statements were made; and (iv) explain why the statements were fraudulent." *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 599 (S.D.N.Y. 2021) (dismissing fraudulent inducement and negligent misrepresentation claims)

As the basis for both its fraudulent inducement and negligence misrepresentation claims, Buss generally alleges that "PCS represented to Buss that it had a selection of EPC companies with which it had extensive experience for a project of this type," which supposedly induced Buss into signing the Agreement.  (Compl. ¶¶ 72, 80.)  However, Buss fails to detail where and when

this statement was purportedly made or by whom.  Because Buss's claim fails to plead the alleged fraudulent representation with the requisite particularity, Buss's claim for fraudulent inducement and negligence misrepresentation should be dismissed.

Additionally, "expressions of opinion of present or future expectations … are nearly always insufficient to give rise to a claim for fraudulent inducement."  *Phoenix Companies, Inc.*, 554 F. Supp. 3d at 593.  Buss contends that it "understood PCS's representation to be an assurance that the EPC contractor or contractors PCS selected *would be competent* and *capable* of working successfully with Buss's technical specifications and Proprietary Equipment." (Compl. ¶¶ 74, 84.) (emphasis added).  Because this allegation depends entirely upon PCS's expectations regarding the performance of contractors, it is a non-actionable opinion about present and future expectations.

Even if this alleged representation were actionable, Buss's supposed reliance on the statement would not be reasonable.  The Agreement contains a merger clause providing that it "constitutes the entire agreement of the parties to this Agreement with respect to its subject matter, supersedes all prior agreements." Ex. A ¶ 27.  But even "[n]otwithstanding the lack of an explicit disclaimer of representations …, courts may disregard a fraudulent inducement claim and give effect to a contract when the parties have negotiated at arm's length and they are sufficiently sophisticated that they could have easily protected themselves either through obtaining readily available information or alternatively including a protective clause in the agreement." *3Com Corp. v. Cap. 4, Inc.*, 626 F. Supp. 2d 428, 431 (S.D.N.Y. 2009).  Buss admits that it is a "sophisticated" party, (Compl. ¶ 1), and undisputedly can assess whether a contractor is qualified to complete a project like an AHF plant.  Indeed, Buss alleges that its technical specifications and Proprietary

Equipment had already been successfully used in five AHF plants in China. (Compl. ¶ 39.) Thus, Buss's alleged reliance on the purported statement is not reasonable as a matter of law.

To maintain a claim for negligent representation, a plaintiff must establish, "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 292 (W.D.N.Y. 2014) (dismissing negligent representation claim).

Buss fails to allege that a "special or privity-like relationship" existed between the parties, and that failure craters the entire claim. "An ordinary contractual relationship, without more, is insufficient to establish a 'special relationship.' Instead, a 'closer degree of trust, confidence, or reliance,' such as that implied by a previous or continuing relationship between the parties, must be shown." *Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*, 983 F. Supp. 403, 436 (S.D.N.Y. 1997) (dismissing negligent misrepresentation claim). Negotiation of an arm's-length commercial agreement is not sufficient to demonstrate a previous or continuing relationship. *Phoenix Companies, Inc.*, 554 F. Supp. 3d at 590 (dismissing negligence misrepresentation claim). For the additional reason that Buss fails to sufficiently allege that PCS owed a duty to Buss by virtue of a special relationship, Buss's claim of negligent misrepresentation should also be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should exercise its discretion and abstain from exercising jurisdiction over the Complaint, or alternatively, dismiss the non-declaratory claims for failure to state any claim upon which relief can be granted. Thus, PCS respectfully requests the Court dismiss the Complaint in its entirety or, in the alternative, stay this case pending the resolution of the first-filed North Carolina Action.

Dated: June 27, 2025                    Respectfully Submitted,

                                        *s/ Mike Stenglein*
                                        _____
                                        Mike Stenglein
                                        New York State Bar No. 6058093
                                        mstenglein@kslaw.com
                                        Adam Gray
                                        Texas State Bar No. 24087616
                                        Admitted *Pro Hac Vice*
                                        agray@kslaw.com
                                        Christopher H. Taylor
                                        Texas State Bar No. 24013606
                                        Admitted *Pro Hac Vice*
                                        ctaylor@kslaw.com
                                        KING & SPALDING LLP
                                        500 West 2nd Street, Suite 1800
                                        Austin, Texas 78701
                                        (512) 457-2000 (telephone)

                                        **ATTORNEYS FOR DEFENDANT PCS
                                        PHOSPHATE COMPANY, INC.**

## CERTIFICATION OF COMPLIANCE

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word.  Pursuant to the word count system in Microsoft Word, the total number of words in the Memorandum of Law, excluding the caption, table of contents, table of authorities, signature block, and this certification is 6,967.  The foregoing Memorandum of Law complies with the formatting rules set forth in the § III.D of the Court's Individual Practices.

*s/ Mike Stenglein*
Mike Stenglein