```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------
BUSS CHEMTECH AG,
                    Plaintiff,          25-cv-3710 (JGK)

     - against -                        MEMORANDUM OPINION
                                        AND ORDER
PCS PHOSPHATE COMPANY, INC.,
                    Defendant.
-----------------------------------
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Buss ChemTech AG ("Buss"), brings this action against PCS Phosphate Company, Inc. ("PCS"), seeking a declaratory judgment and damages, together with pre-judgment and post-judgment interest, and costs and expenses. Compl. 18, ECF No. 1.

Buss's claims arise out of a contractual dispute between Buss and PCS over the use of Buss's proprietary technology in an anhydrous hydrogen fluoride plant (the "AHF Project") in North Carolina. Id. ¶ 1. Buss alleges that on February 28, 2025, PCS commenced a suit against Buss in North Carolina state court, asserting various state-law claims, notwithstanding that the governing contract between the parties designates the courts of New York as the exclusive forum. Id. ¶¶ 57-58. In this action, Buss seeks a declaratory judgment that Buss did not breach the governing contract (Count I), asserts a breach-of-contract claim (Count II), a fraudulent inducement claim (Count III), and a negligent misrepresentation claim (Count IV). Id. 14-18.

PCS moves to dismiss or stay this action in its entirety under Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 2201. Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mot.") 4-20, ECF No. 23. PCS also moves to dismiss Buss's Counts II-IV under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Id. 20-23. For the reasons stated below, PCS's motion to dismiss or stay under Rule 12(b)(1) and 28 U.S.C. § 2201 is **denied**; PCS's motion to dismiss Buss's Count II under Rule 12(b)(6) is **denied**; PCS's motion to dismiss Counts III and IV under Rules 12(b)(6) and 9(b) is **granted without prejudice**.

I.

Unless otherwise noted, the following facts are taken from the Complaint and are accepted as true for purposes of the current motion.

Buss is a Swiss company with its principal place of business in Pratteln, Switzerland. Compl. ¶ 8. Buss is a chemical process technology provider company experienced in methods for producing AHF, an industrial compound used in refrigerants, light bulbs, pharmaceuticals, and other applications. Id. ¶ 12.

PCS is a Delaware corporation with its principal place of business in North Carolina. Id. ¶ 9. PCS produces acids for various industrial and agricultural applications. Id. ¶ 13.

Buss alleges that PCS approached Buss in 2019 to license Buss's AHF technology because PCS was satisfied with Buss's prior work. Compl. ¶ 15. On September 3, 2019, Buss and PCS executed an Engineering, Procurement and Field Support Services Agreement (the "Agreement"). Id.; see Agreement, ECF No. 1-1.

Under the Agreement, Buss agreed to provide PCS with proprietary equipment and services relating to the AHF Project, including an "Extended Basic Engineering package," a license to use Buss's process technology, and assistance during installation, commissioning, start-up, and performance testing.[1] Technical Specifications § 5.1, ECF No. 1-1-A. PCS, in turn, agreed to pay a fixed price of 9,580,000 Swiss francs (approximately $9,707,154 at the September 3, 2019 exchange rate), as well as the costs incurred for Buss's field support. Agreement § 6. PCS also agreed to provide overall project management; detailed engineering; procurement and supply of all equipment outside Buss's scope; design, supply, and construction of all materials outside Buss's scope; erection, commissioning, and start-up of the AHF unit; and operation and maintenance of the AHF unit. Technical Specifications § 5.2.

The Agreement includes a litigation provision, which provides:

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

3

> Any litigation by the parties over any Dispute under this Agreement shall be governed by New York law. All disputes arising out of or in connection with this Agreement shall be finally settled in the State of New York or the United States District Court for the Southern District of New York.

The Agreement § 21(b).

The Agreement also includes a governing law provision, which provides:

> This Agreement shall be governed by New York law. All disputes arising out of or in connection with this Agreement shall be finally settled in State of New York or the United States District Court for the Southern District of New York.

Id. § 29.

Buss alleges that PCS initially proposed that any disputes be governed by North Carolina law and adjudicated in North Carolina, while Buss countered that English law should govern and that disputes be resolved by arbitration in Switzerland under the United Nations Commission on International Trade Law. Id. ¶¶ 36-37. Buss further alleges that the parties ultimately agreed on a neutral forum and law – namely, New York courts applying New York law. Id.

Buss allegedly began performing under the Agreement immediately after its execution. Id. ¶ 38. During its performance, Buss advised PCS that the successful execution of the AHF Project would require an "experienced and proven" engineering, procurement, and construction ("EPC") contractor. Id. ¶ 39. Buss

4

recommended a Chinese EPC contractor, WengFu, which allegedly had successfully installed five AHF plants in China using Buss's technical specifications and proprietary technology. Id. Buss alleges that PCS rejected that recommendation and instead divided the EPC responsibilities among several companies, including Jacobs Engineering Group, Inc. ("Jacobs"), Roberts Company, and RECO NC. Id. ¶ 41.

Buss further alleges that, on July 15, 2023, PCS decided to terminate Buss's on-site role and to manage the AHF Project itself. Id. ¶ 49. According to Buss, the parties parted on good terms, and PCS paid Buss "every dollar due under the Agreement without objection or delay." Id. ¶¶ 49, 53. Buss alleges, however, that PCS subsequently conducted tests and made significant alterations to the equipment without Buss's participation or authorization. Id. ¶¶ 50-51.

On November 13, 2024, PCS sent Buss a demand letter and notice of dispute alleging breaches of contract by Buss and Jacobs and demanding more than $140 million in damages. Id. ¶¶ 54-55. On February 28, 2025, PCS commenced an action against Buss and Jacobs in North Carolina state court, asserting claims for breach of contract, breach of warranty, negligent misrepresentation, and professional negligence. Id. ¶ 58.

On May 2, 2025, Buss commenced this action in the United States District Court for the Southern District of New York. See

5

ECF No. 1. On June 27, 2025, PCS moved to dismiss or stay this action under Rule 12(b)(1) and 28 U.S.C. § 2201 and moved to dismiss Buss's Counts II-IV under Rules 12(b)(6) and 9(b). See ECF No. 23.

## II.

### A. Motion to Dismiss or Stay Under Rule 12(b)(1) and 28 U.S.C. § 2201

PCS contends that, in light of the pending North Carolina state-court action, this case should be dismissed or stayed under Rule 12(b)(1) and 28 U.S.C. § 2201 pursuant to Brillhart/Wilton abstention, or, in the alternative, Colorado River abstention.

Rule 12(b)(1) requires dismissal of a claim for lack of subject matter jurisdiction. Section 2201 creates a declaratory judgment remedy.

#### 1. Brillhart/Wilton Abstention

Under the Brillhart/Wilton abstention doctrine, district courts have "a broad grant of discretion . . . to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). However, the Brillhart/Wilton doctrine "does not apply where . . . a plaintiff does not seek purely declaratory relief, but also seeks damages caused by the defendant's conduct." Kanciper v. Suffolk

6

Cnty. Soc. for the Prevention of Cruelty to Animals, Inc., 722 F.3d 88, 93 (2d Cir. 2013).

In this case, PCS acknowledges that Buss pleads damages claims – Counts II through IV – in addition to seeking declaratory relief. Def.'s Mot. 8. Nevertheless, relying on Nat'l Union Fire Ins. v. Karp, 108 F.3d 17 (2d Cir. 1997), PCS argues that Buss's damages claims are "in essence" claims for declaratory relief. Def.'s Mot. 8-9. That reliance is misplaced. In Karp, the Court of Appeals for the Second Circuit affirmed abstention where the insurer sought declaratory relief and also brought a statutory interpleader action that likewise turned on a declaration of non-coverage. 108 F.3d at 19–20. Karp did not involve, and thus did not address, the circumstance presented here — where declaratory relief is sought alongside independent claims for damages. Accordingly, Karp does not undermine Kanciper's rule that Wilton/Brillhart abstention is inapplicable when a plaintiff seeks damages in addition to a declaratory judgment.

There is a limited exception to Kanciper where the plaintiff's purported damages claims are, in substance, wholly derivative of the requested declaratory relief. See Roche Cyrulnik Freedman LLP v. Cyrulnik, 582 F. Supp. 3d 180, 190 (S.D.N.Y. 2022). Nevertheless, this exception does not apply here. Buss asserts independent claims for damages: a breach-of-contract claim based on PCS's alleged breach of the Agreement's

7

litigation and governing-law provisions, and claims for fraudulent inducement and negligent misrepresentation based on PCS's alleged misrepresentations concerning its selection of experienced EPC contractors. Buss's requests for declaratory relief, by contrast, seek declarations that Buss did not breach, that PCS terminated for convenience, and that any damages are limited in the event of a breach by Buss. Buss's damages claims do not depend on prevailing on those requested declarations; they would remain viable even if Buss were to lose on its declaratory-judgment requests. Because Buss seeks damages independent of its request for declaratory relief, the exception to Kanciper does not apply, and Wilton/Brillhart abstention is inapplicable.

### 2. Colorado River Abstention

Alternatively, PCS contends that Colorado River abstention warrants dismissal of this case.

Colorado River abstention is an "extraordinary and narrow" exception to a federal court's duty to exercise the jurisdiction conferred upon it. Woodford v. Cmty. Action Agency of Greene Cnty., Inc., 239 F.3d 517, 522 (2d Cir. 2001) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976)). A threshold requirement is that the state and federal proceedings be "parallel." Dittmer v. Cnty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998).

PCS argues that the North Carolina action is "plainly parallel [because] it involves substantially the same parties (PCS and Buss) and arises from the same set of operative facts (the alleged failures in the AHF Project)." Def.'s Mot. 15. But similarity is not identity. "Similarity of parties is not the same as identity of parties." All. of Am. Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988). The North Carolina action also includes Jacobs as a party, and the presence of an additional party is a "strong factor[] against" finding the proceedings parallel. Id.; see Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd., 17 F.3d 46, 50 (2d Cir. 1994).

Additionally, "[m]ere commonality in subject matter does not render actions parallel." Mochary v. Bergstein, 42 F.4th 80, 86 (2d Cir. 2022). Although Count I in this case overlaps with aspects of the North Carolina action, Buss seeks different relief – namely, declarations of no breach, cancellation for convenience, and limitation of damages – while PCS seeks affirmative damages in North Carolina. Moreover, this action includes claims that are not presented in North Carolina, including a breach-of-contract claim premised on PCS's litigation conduct there and fraud-based claims grounded in PCS's alleged misrepresentations regarding its intent to retain an experienced EPC contractor. These differences in parties, claims, and relief sought confirm that the actions are not parallel and therefore

counsel strongly against Colorado River abstention. See Sheerbonnet, 17 F.3d at 50; All. of Am. Insurers, 854 F.2d at 603.

"Where a federal court properly has subject matter jurisdiction, it has a virtually unflagging obligation to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." Sheerbonnet, 17 F.3d at 49. Because Buss's action is not limited to a request for declaratory relief, abstention under Brillhart/Wilton is unavailable; because this action is not parallel to the North Carolina action, Colorado River abstention likewise does not apply. Accordingly, PCS's motion to dismiss or stay under Rule 12(b)(1) and 28 U.S.C. § 2201 is **denied**.

### B. Motion to Dismiss Under Rules 12(b)(6) and 9(b)

PCS argues that Buss's breach-of-contract claim (Count II) is not cognizable under North Carolina law. Def.'s Mot. 20–21. PCS also contends that Buss has not pleaded its fraudulent inducement claim (Count III) or its negligent misrepresentation claim (Count IV) with the particularity required by Rule 9(b).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### 1. Breach of Contract (Count II)

"A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989) (citing Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941)).

11

Under New York General Obligations Law, "[t]he parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars . . . may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." N.Y. Gen. Oblig. Law § 5-1401(1). As the New York Court of Appeals has cautioned in a case in which § 5-1401(1) applied, "[t]o find here that courts must engage in a conflict-of-laws analysis despite the parties' plainly expressed desire to apply New York law would frustrate the Legislature's purpose of encouraging a predictable contractual choice of New York commercial law and, crucially, of eliminating uncertainty regarding the governing law." IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A., 982 N.E.2d 609, 612 (N.Y. 2012). Consistent with that directive, federal courts in this District routinely enforce choice-of-law provisions in contracts that satisfy the statute's monetary threshold. See, e.g., Indian Harbor Ins. Co. v. City of San Diego, 972 F. Supp. 2d 634, 651-52 (S.D.N.Y. 2013), aff'd, 586 F. App'x 726 (2d Cir. 2014); Cajun Conti, LLC v. Starr Surplus Lines Ins., No. 23-cv-8844, 2025 WL 764131, at *4 (S.D.N.Y. Mar. 11, 2025).

The Complaint alleges that the final forum-selection and governing-law provisions were the product of negotiation and compromise – selecting New York law and a New York forum as a middle ground between PCS's proposed North Carolina law and forum and Buss's proposed English law and Swedish forum. Because the Agreement arises out of a transaction exceeding $9 million, the parties' selection of New York law is enforceable under N.Y. Gen. Oblig. Law § 5-1401(1). Accordingly, the Agreement's New York governing-law clause controls, and New York substantive law applies. See N.Y. Gen. Oblig. Law § 5-1401.

PCS nevertheless argues that New York General Business Law § 757(1) counsels against enforcing the Agreement's forum-selection and choice-of-law provisions because the dispute concerns a "home-state" construction project. Def.'s Mot. 5-6. That argument is misplaced. Section 757(1) renders void and unenforceable only provisions in a covered construction contract that select "the laws of another state." N.Y. Gen. Bus. Law § 757(1) (emphasis added). It does not bar the enforcement of a clause selecting New York law. Accordingly, § 757(1) provides no basis to disregard the Agreement's New York governing-law provision.

PCS also argues that North Carolina law and public policy favor the application of North Carolina law. Def.'s Mot. 5. That contention is unavailing. Under New York choice-of-law principles, courts generally enforce an otherwise valid contractual

13

choice-of-law provision and do not weigh foreign states' policy preferences to displace the parties' selection. See Capstone Logistics Holdings, Inc. v. Navarrete, No. 17-cv-4819, 2018 WL 6786338, at *22 (S.D.N.Y. Oct. 25, 2018) (explaining that "the courts of New York have refused to consider the public policy of foreign states . . . to overturn an otherwise valid contractual choice of law provision"), aff'd and remanded on other grounds, 796 F. App'x 55 (2d Cir. 2020). Recent decisions apply the same rule in rejecting invitations to consider another state's law or asserted policy interests. See, e.g., CBKZZ Inv. LLC v. Renaissance Re Syndicate 1458 Lloyds, No. 22-cv-10672, 2024 WL 728890, at *2 (S.D.N.Y. Feb. 22, 2024) (declining to consider Texas insurance law to override application of New York choice-of-law rules); Ram Krishana, Inc. v. Mt. Hawley Ins., No. 22-cv-03803, 2024 WL 1657763, at *4 (S.D.N.Y. Apr. 17, 2024) (refusing to consider Louisiana public policy to displace an otherwise enforceable New York choice-of-law clause). Accordingly, North Carolina law and public policy have no bearing on the choice-of-law analysis here and do not provide a basis to invalidate the Agreement's New York governing-law provision.

Because PCS's motion to dismiss Buss's breach-of-contract claim rests solely on North Carolina law and on the contention that North Carolina would not honor a forum selection clause requiring litigation outside North Carolina, see Def.'s Mot. 20-

14

21, PCS's motion applies the wrong legal standard and is therefore **denied.**

### 2. Fraudulent Inducement (Count III) and Negligent Misrepresentation (Count IV)

PCS argues that Buss has not pleaded the circumstances constituting fraud with the particularity required by Rule 9(b), and therefore that Counts III and IV fail to state plausible claims. Def.'s Mot. 21-23.

Rule 9(b) imposes a heightened pleading standard for allegations of fraud: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b) in this Circuit, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

PCS contends that Buss's allegations are too general to meet that standard. Def.'s Mot. 21-22. Buss alleges, for example, that "PCS represented to Buss that it had a selection of EPC companies with which it had extensive experience for a project of this type," but does not plead who made that representation, or when and where it was made. Compl. ¶ 72; see also id. ¶ 80. Courts in this Circuit dismiss fraud claims where

15

the pleading fails to allege the "time, place or speaker" of the purportedly fraudulent statements. Boley v. Pineloch Assocs., 700 F. Supp. 673, 678 (S.D.N.Y. 1988); see also Neely v. RMS Residential Mortg. Sols., L.L.C., No. 12-cv-1523, 2013 WL 752636, at *13 (E.D.N.Y. Feb. 26, 2013).

In this case, Buss's fraud-based allegations do not identify the specific speakers or specify the time and place of the alleged misrepresentations. See Compl. ¶¶ 68–85. They also describe the alleged misrepresentations only in broad terms, without pleading the particular statements with sufficient specificity. See id. ¶¶ 72, 80. Accordingly, Counts III and IV do not satisfy Rule 9(b) and therefore fail to state plausible claims. PCS's motion to dismiss Counts III and IV is **granted without prejudice**.

### CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, PCS's motion to dismiss or stay under Rule 12(b)(1) and 28 U.S.C. § 2201 is **denied**; PCS's motion to dismiss Buss's Count II under Rule 12(b)(6) is **denied**; PCS's motion to dismiss Counts III and IV under Rules 12(b)(6) and 9(b) is **granted without prejudice** to Buss's ability to file an amended complaint within **twenty-one (21) days**. If no amended complaint is filed within twenty-one

16

(21) days, the dismissal of Counts III and IV will be with prejudice.

The parties should file a Rule 26(f) Report within **twenty-one (21) days.**

The Clerk is directed to close all pending motions in this case.

SO ORDERED.
Dated:   New York, New York
         January 6, 2026

_____
John G. Koeltl
United States District Judge