```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────
BUSS CHEMTECH AG,
                        Plaintiff,            25-cv-3710 (JGK)

        - against -                           MEMORANDUM OPINION
                                              AND ORDER
PCS PHOSPHATE COMPANY, INC.,
                        Defendant.
─────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Buss ChemTech AG ("Buss"), brings this action against PCS Phosphate Company, Inc. ("PCS"), seeking a declaratory judgment and damages, together with pre-judgment and post-judgment interest, and costs and expenses. Am. Compl. 18–19, ECF No. 33.

Buss's claims arise out of a contractual dispute between Buss and PCS over the use of Buss's proprietary technology in an anhydrous hydrogen fluoride plant (the "AHF Project") in North Carolina. Id. ¶ 1. In this action, Buss seeks a declaratory judgment that Buss did not breach the governing contract (Count I), asserts a breach-of-contract claim (Count II), a fraudulent inducement claim (Count III), and a negligent misrepresentation claim (Count IV). Id. 14–18.

PCS moves to dismiss Buss's Counts III and IV under Federal Rules of Civil Procedure 12(b)(6). See ECF No. 41. For the reasons stated below, PCS's motion to dismiss is **denied.**

**I.**

Unless otherwise noted, the following facts are taken from the Amended Complaint and are accepted as true for purposes of the current motion.

**A.**

Buss is a Swiss company with its principal place of business in Pratteln, Switzerland. Am. Compl. ¶ 8. Buss is a chemical process technology provider experienced in methods for producing AHF, an industrial compound used in refrigerants, light bulbs, pharmaceuticals, among other things. Id. ¶ 12.

PCS is a Delaware corporation with its principal place of business in North Carolina. Id. ¶ 9. PCS produces acids for various industrial and agricultural applications. Id. ¶ 13.

Buss alleges that PCS approached Buss in 2019 to license Buss's AHF technology because PCS was satisfied with Buss's prior work. Id. ¶ 15. On September 3, 2019, Buss and PCS executed an Engineering, Procurement and Field Support Services Agreement (the "Agreement"). Id.; see Agreement, ECF No. 33-1.

Under the Agreement, Buss agreed to provide PCS with proprietary equipment and services relating to the AHF Project, including an "Extended Basic Engineering package," a license to use Buss's process technology, and assistance during

2

installation, commissioning, start-up, and performance testing.[1] Agreement, Ex. A ("Technical Specifications") § 5.1, ECF No. 33-1-A. PCS, in turn, agreed to pay a fixed price of 9,580,000 Swiss francs (approximately $9,707,154 at the September 3, 2019 exchange rate), as well as the costs incurred for Buss's field support. Agreement § 6. PCS also agreed to provide overall project management; detailed engineering; procurement and supply of all equipment outside Buss's scope; design, supply, and construction of all materials outside Buss's scope; erection, commissioning, and start-up of the AHF unit; and operation and maintenance of the AHF unit. Technical Specifications § 5.2.

The Agreement includes a governing law provision, which provides:

> This Agreement shall be governed by New York law. All disputes arising out of or in connection with this Agreement shall be finally settled in State of New York or the United States District Court for the Southern District of New York.

Agreement § 29.

The Agreement also includes a merger clause, which provides:

> This Agreement (including the exhibits attached hereto) constitutes the entire agreement of the parties to this Agreement with respect to its subject matter, supersedes all prior agreements (except with respect to Existing Purchase Orders to the extent set forth in Section 23

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

above), if any, of the parties to this Agreement with respect to its subject matter, and may not be amended except in writing signed by the party to this Agreement against whom the change is being asserted.

Id. § 27.

Buss alleges that it began performing under the Agreement immediately after the Agreement was executed. Id. ¶ 42. According to Buss, after it delivered the technical process specifications and proprietary equipment, it continued to provide on-site assistance and troubleshooting. Id. ¶¶ 43-47. Buss further alleges that, on April 16, 2020, PCS gave Buss very favorable reviews. Id. ¶ 49.

Since the inception of the AHF Project, Buss had advised PCS that the successful execution of the AHF Project would require an "experienced and proven" engineering, procurement, and construction ("EPC") contractor. Id. ¶ 38.

In August 2016, approximately three years before the parties executed the Agreement, Olivier Ruffiner ("Ruffiner"), a business manager at Buss, met with John Godber ("Godber"), a senior director at PCS, in Aurora, North Carolina, to discuss the AHF Project. Id. ¶ 39. According to Buss, Ruffiner recommended that PCS retain WengFu, a Chinese EPC contractor that had successfully installed five AHF plants in China using Buss's technical specifications and proprietary technology. Id. Buss alleges that Godber rejected that recommendation and represented

4

that "PCS regularly executes large projects across the United States and maintained relationships with qualified contractors capable of effectively performing the substantial engineering and procurement work that was required for a project of this type." Id. ¶ 40.

However, PCS did not retain a single EPC contractor; instead, PCS divided the EPC responsibilities among several companies, including Jacobs Engineering Group, Inc. ("Jacobs"), Roberts Company, and RECO NC. Id. ¶ 41. Buss alleges that none of the EPC companies retained by PCS had the required experience with the required technology and engineering. Id. ¶ 75.

Buss further alleges that, on July 15, 2023, PCS decided to terminate Buss's on-site role and to manage the AHF Project itself. Id. ¶ 50. According to Buss, the parties parted on good terms, and PCS paid Buss "every dollar due under the Agreement without objection or delay." Id. ¶¶ 50, 54. Buss alleges, however, that PCS subsequently conducted tests and made significant alterations to the equipment without Buss's participation or authorization. Id. ¶¶ 51-52.

**B.**

On November 13, 2024, PCS sent Buss a demand letter and notice of dispute alleging breaches of contract by Buss and Jacobs and demanding more than $140 million in damages. Id. ¶¶ 55-56. On February 28, 2025, PCS commenced an action against Buss and

Jacobs in North Carolina state court, asserting claims for breach of contract, breach of warranty, negligent misrepresentation, and professional negligence. Id. ¶¶ 58-59.

On May 2, 2025, Buss commenced this action in this Court. See ECF No. 1. On June 27, 2025, PCS moved to dismiss or stay this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(1), and separately moved to dismiss Counts II through IV pursuant to Rules 12(b)(6). See ECF No. 23.

On January 6, 2026, the Court concluded that Buss's "fraud-based allegations d[id] not identify the specific speakers or specify the time and place of the alleged misrepresentations" and "describe[d] the alleged misrepresentations only in broad terms, without pleading the particular statements with sufficient specificity." Buss ChemTech AG v. PCS Phosphate Co. ("Buss I"), No. 25-cv-3710, 2026 WL 35380, at *6 (S.D.N.Y. Jan. 6, 2026). Accordingly, the Court granted PCS's motion to dismiss Counts III and IV without prejudice to Buss's ability to amend the complaint within 21 days but otherwise denied PCS's motions. Id.

On January 27, 2026, Buss filed the Amended Complaint. See Am. Compl. PCS now moves to dismiss Counts III and IV of the Amended Complaint pursuant to Rules 12(b)(6). See ECF No. 41.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

7

Rule 9(b) imposes a heightened pleading standard for allegations of fraud: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

Both parties agree that New York law should apply to the claims in this case. See Agreement § 29. The Court therefore "follow[s] their lead." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

### III.

In its motion to dismiss Buss's fraudulent-inducement claim (Count III), PCS advances three arguments: (1) the alleged misrepresentation is an nonactionable opinion; (2) the allegations are "unsubstantiated and conclusory"; and (3) Buss could not reasonably have relied on PCS's 2016 representation in connection with a project that was not undertaken until three years later. See Def.'s Mem. Supp. of Mot. to Dismiss ("Def.'s Mem.") 5–8, ECF No. 42.

**A.**

As an initial matter, PCS argues that the alleged misrepresentation is an opinion and therefore not actionable as a basis for a fraud claim. Def.'s Mem.6-7.

It is well settled that representations amounting to mere opinion or puffery are not actionable as fraud. Jacobs v. Lewis, 689 N.Y.S.2d 468, 468 (App. Div. 1999). On the other hand, courts applying New York law have recognized that statements concerning a party's existing expertise, experience, or then-present capabilities can constitute statements of present fact rather than non-actionable opinion. See, e.g., Coolite Corp. v. Am. Cyanamid Co., 384 N.Y.S.2d 808, 810 (App. Div. 1976); La Pecora Bianca Holdings, LLC v. Empowered Hosp. LLC, No. 19-cv-9655, 2021 WL 1164267, at *6 (S.D.N.Y. Mar. 25, 2021); Intelligen Power Sys., LLC v. dVentus Techs. LLC, No. 14-cv-2941, 2015 WL 3490256, at *10 (S.D.N.Y. June 2, 2015).

In this case, Buss alleges that PCS represented that it "regularly execute[d] large projects across the United States" and "maintained relationships with many qualified contractors capable of effectively performing the substantial engineering and procurement work that was required for a project of this type." Am. Compl. ¶ 40. Those alleged representations are sufficiently concrete and verifiable to qualify as statements of present fact. They concern PCS's then-existing experience,

9

capabilities, and business relationships, rather than vague ex-
pressions of optimism or aspirational opinion.

In its reply, PCS argues that La Pecora Bianca and Intelli-
gen Power are distinguishable because those cases involved
multiple communications, whereas Buss alleges only a single
statement. Def.'s Reply 5-7, ECF No. 49. That argument is unper-
suasive. Whether a representation is actionable turns on its
substance, not on the number of times it was made. A statement
of opinion does not become fact merely because it is repeated,
and a statement of present fact does not become opinion because
it is made only once. The relevant question is whether the al-
leged representation conveyed concrete information about PCS's
existing abilities and relationships. See La Pecora Bianca, 2021
WL 1164267, at *6.

Accordingly, the alleged misrepresentation by PCS does not
constitute a non-actionable opinion but instead concerns then-
present facts relating to PCS's capabilities and connections in
performing the AHF Project.

**B.**

PCS also argues that Buss's fraudulent-inducement claims
are "unsubstantiated and conclusory" because Buss fails to al-
lege facts showing either that PCS's statements were false or
that PCS knew, or should have known, that those statements were
false. Def.'s Mem. 5-6.

That argument is unpersuasive. The Amended Complaint contains sufficient factual allegations to support a plausible inference of falsity. According to Buss, Godber represented that PCS had relationships with qualified EPC contractors capable of performing the engineering and procurement work required for a project of this type, but that PCS in fact proceeded by assigning those responsibilities to companies that lacked the necessary experience. Am. Compl. ¶¶ 40-41. The contrast between the capability and contractor relationships that PCS allegedly represented it possessed and the allegedly inexperienced entities it in fact used is sufficient, at the pleading stage, to support an inference that the representation was false when made. See, e.g., La Pecora Bianca, 2021 WL 1164267, at *6 (the juxtaposition of the initial representations and subsequent incompetent performance is sufficient to plead falsity); White v. Davidson, 55 N.Y.S.3d 223, 224 (App. Div. 2017).

Similarly, the Amended Complaint adequately alleges that PCS knew, or at least should have known, that the statement was false when made. Buss alleges that Godber was a senior director at PCS and served as PCS's point of contact in negotiating projects of the scale and complexity of the AHF Project. It is plausible to infer that, given his role, Godber was in a position to know whether PCS in fact had the experience, capabilities, and contractor relationships that he allegedly

11

claimed PCS had. See Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) (holding that the officers, directors, majority shareholders, and employees of the defendant corporation were in a position to know that the representations were false).

Although the allegations as to knowledge are not extensive, that is not fatal at the pleading stage. A plaintiff is not required, before discovery, to plead in detail matters that are peculiarly within the defendant's knowledge. As the New York Appellate Division of the New York State Supreme Court has explained, "[t]o require plaintiffs, at this stage of the proceeding, to establish what defendant knew or intended would present an undue burden, considering that these would be matters particularly within defendant's knowledge." DaPuzzo v. Reznick Fedder & Silverman, 788 N.Y.S.2d 69, 71 (App. Div. 2005). At this stage, the Amended Complaint plausibly alleges scienter.

### C.

PCS also argues that Buss could not reasonably have relied on PCS's 2016 representations about its capabilities and relationships with EPC contractors because the AHF Project was not implemented until approximately three years later. Def.'s Mem. 7-8. Moreover, PCS contends that merger clause in the Agreement forbids Buss from relying upon the 2016 negotiation prior to the Agreement. Id.

That argument is premature at this stage. As the New York Court of Appeals has observed, "[t]he question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive." DDJ Mgmt., LLC v. Rhone Grp. L.L.C., 931 N.E.2d 87, 91-92 (N.Y. 2010) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)). For that reason, courts routinely recognize that reasonable reliance generally presents a factual issue not suitable for resolution on a motion to dismiss. See Am. Media, Inc. v. Bainbridge & Knight Lab'ys, LLC, 22 N.Y.S.3d 437, 439 (App. Div. 2016); Schlaifer, 119 F.3d at 98.

In any event, the Amended Complaint plausibly alleges reliance at this stage. Buss alleges that it relied on PCS's representations that PCS had the capability to carry out a project of this kind and had relationships with qualified EPC contractors that would be competent to perform the necessary engineering and procurement work. Am. Compl. ¶ 87. At the pleading stage, that is sufficient.

The mere passage of time between the alleged representation and the eventual implementation of the project does not, by itself, render reliance unreasonable as a matter of law, particularly where the alleged misrepresentation concerned PCS's then-existing capabilities and business relationships and where Buss alleges that those representations induced it to enter into

13

the Agreement. Whether Buss's reliance ultimately was justified in light of all the circumstances is a factual question that cannot be resolved on this motion.

Moreover, "where the complaint states a cause of action for fraud, the parol evidence rule is not a bar to showing the fraud either in the inducement or in the execution despite an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made." Danann Realty Corp. v. Harris, 157 N.E.2d 597, 598–99 (N.Y. 1959); see also Int'l Bus. Machines Corp. v. GlobalFoundries U.S. Inc., 167 N.Y.S.3d 13, 15 (App. Div. 2022). Accordingly, the Agreement's general merger clause does not, at this stage, bar Buss from alleging reasonable reliance on the representations that Godber allegedly made during the 2016 negotiations.

Because the Amended Complaint plausibly alleges a misrepresentation of present fact, rather than nonactionable opinion, on which Buss reasonably relied, PCS's motion to dismiss Count III is **denied**.

## IV.

As to Buss's negligent-misrepresentation claim (Count IV), PCS argues that Buss fails to allege the kind of special or privity-like relationship required under New York law. Def.'s Mem. 9. In particular, PCS contends that the negotiation of an

14

arm's-length commercial agreement, without more, is insufficient to establish the requisite relationship. Id.

That argument does not fully account for the allegations in the Amended Complaint. Buss alleges that its relationship with PCS did not begin and end with the negotiation of the Agreement. Rather, the Amended Complaint alleges that, before the Agreement was executed, Buss and PCS had already worked together on an on-site feasibility assessment. Am. Compl. ¶ 14. Buss further alleges that PCS was satisfied with Buss's prior work, and that this prior course of dealing led PCS to select Buss for the AHF Project. Id. ¶ 15. The Amended Complaint also alleges that the relationship remained ongoing during implementation of the AHF Project: Buss continued voluntarily to provide PCS with assistance and parts, and PCS, in turn, gave Buss very favorable reviews. Id. ¶¶ 43-49.

As the New York Court of Appeals has explained, "[w]hether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." Kimmell v. Schaefer, 675 N.E.2d 450, 454 (N.Y. 1996). In this case, the Amended Complaint alleges more than a single arm's-length negotiation and plausibly alleges a relationship marked by ongoing dealings and a degree of trust and confidence between the parties. At this stage, those allegations are sufficient. It

15

is therefore premature to determine on a motion to dismiss whether the relationship ultimately was sufficiently close to qualify as a special or privity-like relationship. See 470 4th Ave. Fee Owner, LLC v. Adam Am. LLC, 169 N.Y.S.3d 250, 252 (App. Div. 2022); LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC, 10 F. Supp. 3d 504, 525 (S.D.N.Y. 2014) (explaining that, even where "all parties are sophisticated entities engaging in an arm's-length transaction," "[a]bsent an effective disclaimer, the existence of a confidential relationship is ultimately a question of fact, dependent upon the circumstances in each case"). Accordingly, PCS's motion to dismiss Count IV is **denied.**

CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, PCS's motion to dismiss Counts III and IV under Rule 12(b)(6) is **denied.**

The Clerk is directed to close ECF No. 41 in this case.

SO ORDERED.
Dated:    New York, New York
          May 7, 2026

_____
      John G. Koeltl
United States District Judge

16